UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

**JACQUELINE CLARKE,**

Plaintiff,

**- against -**

**NEW YORK CITY DEPARTMENT OF
EDUCATION,** *et al.*,

Defendants.

----------------------------------------------------------------

**MEMORANDUM DECISION
AND ORDER**

18-CV-06783 (AMD) (SJB)

**ANN M. DONNELLY,** United States District Judge:

On November 29, 2018, the plaintiff, Jacqueline Clarke, brought this action alleging

violations of 42 U.S.C. §§ 1981 and 1983, the Age Discrimination in Employment Act of 1967,

the Fourteenth Amendment, and First Amendment retaliation against the New York City

Department of Education and three DOE employees.  (ECF No. 1.)[1]  The defendants moved to

dismiss the amended complaint on April 22, 2019.  (ECF No. 19.)  I heard oral argument on

March 10, 2020, during which I granted the plaintiff's request to file a second amended

complaint; she did so on April 30, 2020.  (ECF No. 31.)  Now before the Court is the defendant's

motion to dismiss the second amended complaint.  (ECF No. 32.)  For the following reasons, the

defendants' motion to dismiss is granted.

**BACKGROUND[2]**

The plaintiff is a black woman over 50 years old who was born in Jamaica, West Indies.

(ECF No. 31 ¶¶ 6-7.)  In 2003, she started working for the DOE as a substitute teacher.  (*Id.*

---

[1] The plaintiff filed an amended complaint on March 15, 2019.  (ECF No. 18.)

[2] For purposes of this motion, I accept as true the factual allegations in the second amended complaint and draw all reasonable inferences in the plaintiff's favor.  *See Town of Babylon v. Fed. Hous. Fin. Agency,* 699 F.3d 221, 227 (2d Cir. 2012).

¶ 18.)  During her time at the DOE, she became a permanent employee and attained tenure.  (*Id.*)  She has worked at multiple schools, and currently works at Frederick Douglas Academy VI High School.  (*Id.* ¶ 20.)

The plaintiff's complaint is based on her time as a teacher at Intermediate School 162—The Willoughby School—in Brooklyn.  The plaintiff began teaching at I.S. 162 in 2005, and she claims that she did not receive any "negative job performance evaluations" until Principal Amanda Lazerson's arrival in September of 2015.  (*Id.* ¶¶ 19, 21.)[3]  According to the plaintiff, Principal Lazerson "singled out older teachers and teachers of color for excessive supervision" in order to jeopardize their careers.  (*Id.* ¶ 23.)  The principal and two of her subordinates, Jessica Mazzarelli and Patrick Browne, worked together to write "negative letters to the files of the targeted teachers, giv[e] them unfavorable evaluations and job performance ratings, and pursu[e] bogus . . . proceedings against them."  (*Id.* ¶¶ 23-24.)

While Principal Lazerson was "unwelcoming" towards older teachers and teachers of color immediately upon her arrival, the plaintiff claims that several events in the 2016/2017 school year spawned progressive hostility.  (*Id.* ¶¶ 22, 34.)  First, Principal Lazerson invited a friend to sell AFLAC insurance to teachers.  (*Id.* ¶ 35.)  The plaintiff told her colleagues that she thought "the AFLAC situation" was inappropriate, but did not raise her concerns to anyone else.  (*Id.* ¶ 39.)  Principal Lazerson's supervisors learned of the on-campus AFLAC sales through an anonymous report and reprimanded her.  (*Id.* ¶ 37.)  According to the plaintiff, Principal Lazerson complained that "she was 100% certain that a 'senior teacher' reported her[.]"  (*Id.* ¶ 38.)

---

[3] There is one exception to the plaintiff's otherwise unblemished record.  She was out for most of the 2010/2011 academic year because a student attacked her.  (ECF No. 31 ¶ 21.)

Case 1:18-cv-06783-AMD-SJB   Document 43   Filed 01/13/21   Page 3 of 21 PageID #: 386

That same year, Principal Lazerson invited another friend to lead sessions on using state test data to improve performance.  (*Id.* ¶ 41.)  Some of the teachers, including the plaintiff, confronted the expert and questioned the utility of the advice.  (*Id.* ¶ 42.)  The sessions were subsequently canceled, and Principal Lazerson allegedly "felt affronted."  (*Id.* ¶ 43.)  Then, on October 27, 2016, Principal Lazerson scheduled the plaintiff for four teaching periods in a row without a bathroom break—in violation of the union contract.  (*Id*. ¶ 44, 119.)  The plaintiff filed a grievance with the union.  (*Id*. ¶ 44.)

Throughout the 2016/2017 school year, the plaintiff claims that she suffered increasing animosity at the hands of Principal Lazerson and her subordinates, Ms. Mazzarelli and Mr. Browne.  They forced her to address "minor" issues during her lunch break; they reprimanded her in front of students for not enforcing school rules; they "interrupted" her at her after school job; and they sent her outside "in 45 degree weather" to supervise middle school recess by herself.  (*Id.* ¶¶ 116-18, 126, 128, 132, 134-38.)  At one point, Principal Lazerson called the plaintiff into her office to ask her "what [was] wrong with [her] face."  (*Id.* ¶ 109.)  She also told the plaintiff that she was not "engaging enough" during professional development meetings, and singled her out for leaving a professional development meeting to use the bathroom.  (*Id*. ¶¶ 111-13, 123-25.)  The plaintiff was the subject of unannounced observations, and received several disciplinary letters based on "untrue" allegations.  (*Id*. ¶¶ 47, 123, 133, 142, 146, 150.)  She alleges that the defendants took these actions "to give [her] a bad record and set [her] up for further disciplinary action."  (*Id*. ¶ 150.)

The plaintiff's work environment did not improve in the 2017/2018 school year.  The plaintiff, five other African American teachers, and about twenty-seven white and hispanic teachers attended a professional development meeting at which Ms. Mazzarelli discussed a paper

entitled "The Story of the Five Monkeys: that's the way it has always been done."  (*Id.* ¶¶ 99.)
The plaintiff believed that Ms. Mazzarelli's discussion was racist, particularly "[g]iven the
historic association of monkeys and African Americans by the dominant American society."  (*Id.*
¶ 101.)

The plaintiff's evaluations fell "drastically" under Principal Lazerson's leadership.  (*Id.* ¶
47.)  In the 2015/2016 school year, the plaintiff received an overall rating of "effective," with 25
"effective" marks and 6 "developing" marks in various components.  (*Id.* ¶ 46.)  In the
2016/2017 school year, the plaintiff again received an overall rating of "effective," but lower
component marks: 10 "effective" marks, 13 "developing" marks, and 1 "ineffective" mark.  (*Id.*
¶ 47.)  By the 2017/2018 school year, the plaintiff's overall rating had dropped to "developing;"
she received 14 "ineffective" marks, 10 "developing" marks, and only 1 "effective" mark.  (*Id.* ¶
30, 48.)  In May of 2018, the plaintiff was placed on an "improvement plan," and on September
24, 2018, the defendants commenced a Section 3020-a proceeding against her even though she
did not have the required two consecutive years of "ineffective" ratings.  (*Id.* ¶¶ 28-29.)[4]  The
Section 3020-a Specifications charged the plaintiff with "incompetent and inefficient service,
neglect of duty and unwillingness and/or inability to follow procedures and carry out normal
duties" during the past two school years.  (ECF No. 34-1 at 2.)

The plaintiff asked for and received a reassignment to her current school effective August
7, 2018.  Nevertheless, she claims that Principal Lazerson and her subordinates have worked
together to "create the necessary paperwork to support . . . adverse actions against" senior

---

[4] A New York Education Law § 3020-a proceeding is a disciplinary proceeding against public school
teachers that could result in termination.  *See Grennan v. Nassau Cty.*, No. 04-CV-2158, 2007
WL952067, at *4 (E.D.N.Y. Mar. 29, 2007) ("As required by State Education law, BOCES is taking the
necessary steps to suspend her, pending the implementation of a 3020A proceeding, leading to a penalty
up to and possibly including termination.").

teachers and teachers of color.  (*Id.* ¶¶ 50, 54, 65.)  She claims that the defendants have harassed

or forced retirement on numerous teachers over the age of 40 and teachers of color.  (*Id.* ¶ 59.)

Meanwhile, "[s]ome of the younger or [w]hite teachers hired under the leadership of [Principal]

Lazerson" are secure in their jobs.  (*Id.* ¶ 61.)[5]

The plaintiff filed grievances against Principal Lazerson but to no avail.  (ECF No. 31 ¶

62.)  She filed an age discrimination complaint against Principal Lazerson with the New York

State Division of Human Rights and United States Equal Employment Opportunity Commission

in March of 2018.  (*Id.* ¶ 66.)  On September 4, 2018, the NYSDHR found no probable cause to

believe that there was age discrimination and dismissed the complaint.  (*Id.* ¶ 67.)  The EEOC

issued a Notice of Right to Sue letter on October 29, 2018, and the plaintiff served the

Department of Education with a Notice of Claim pursuant to Education Law § 3813 on

November 2, 2018.  (*Id.* ¶¶ 68-69.)  She commenced this action on November 29, 2018, and the

defendants withdrew all Section 3020-a claims on April 2, 2019.  (ECF No. 34-2 at 2.)

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  The "plausibility standard is not akin to a

---

[5] To demonstrate the alleged discrimination, the plaintiff included two charts in paragraphs 59 and 61 of
her second amended complaint.  The chart in paragraph 59 lists 13 teachers who the plaintiff claims
"suffered adverse employment actions . . . due to manufactured and punitive ratings and evaluations."
(ECF No. 31 ¶ 59.)  Paragraph 61 lists 15 "younger or white teachers hired under the leadership of
[Principal] Lazerson" and describes their employment status as "secure."  (*Id.* ¶ 61.)  Each chart provides
the teachers' names, approximate ages, approximate terms of employment, and races.  (*Id.* ¶¶ 59, 61.)

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

Discrimination complaints are subject to a "lowered standard of review" at the motion to dismiss stage. *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 719 (E.D.N.Y. 2015). A plaintiff need not plead each element of a *prima facie* case to withstand a motion to dismiss. *Vega v. Hempstead Union School Dist.,* 801 F.3d 72, 84 (2d Cir. 2015). However, she must still provide "a short and plain statement of the claim that shows that [she is] entitled to relief and that gives the defendants fair notice of [her] claims . . . and the grounds upon which those claims rest." *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 238 (2d Cir. 2007).

At the motion to dismiss stage, the court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)). The court may also consider any "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in [the] plaintiff['s] possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit," as long as the plaintiff relied on the "terms and effect of a document in drafting the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

The defendants include multiple exhibits with their motion to dismiss, including (1) the Section 3020-a Specifications outlining the charges against the plaintiff, (2) a memorandum closing the Section 3020-a proceeding, (3) the plaintiff's NYSDHR complaint, (4) the NYSDHR determination and order, (5) a grievance decision from June of 2017, and (6) a letter from the

N.Y.C. Department of Education notifying plaintiff's counsel that he served the Notice of Claim on the wrong address.  I consider the Section 3020-a and the NYSDHR documents because the plaintiff relied on them to bring this lawsuit and they are incorporated by reference into the complaint.  I do not consider the 2017 grievance decision or the Department of Education letter about the Notice of Claim because neither of these documents are integral to the complaint.

## DISCUSSION

The plaintiff claims discrimination, hostile work environment, and retaliation based on her age and race under 42 U.S.C. §§ 1981 and 1983, the Age Discrimination in Employment Act of 1967, and the New York City Human Rights Law.  She also claims First Amendment retaliation, denial of due process and negligent supervision by the Department of Education. The defendants contend that the plaintiff's claims are either procedurally barred or without merit.[6]  For the reasons that follow, the plaintiff's complaint is dismissed.

### I.     Discrimination

The plaintiff has not plausibly alleged discrimination based on her age or race under §§ 1981, 1983, or the ADEA.[7]  Discrimination claims under these provisions are subject to the three-step burden-shifting analysis articulated by the Supreme Court in *McDonnell-Douglas*

---

[6] The defendants argue that any of the plaintiff's ADEA claims based on "discrete discriminatory acts occurring prior to May 11, 2017" are time-barred.  (ECF No. 33 at 16.)  The plaintiff does not address this argument in her submission, and thus I dismiss these claims as abandoned and consider only alleged age-based discrimination claims post-dating May 11, 2017.  In any event, the plaintiff's claims are dismissed for the reasons discussed in sections I-III of this decision.

[7] To maintain a discrimination claim under § 1983, the plaintiff must show that the defendant is a person "acting under the color of state law," in addition to a deprivation of a federal right.  *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122 (2d Cir. 2004).  The defendants, the DOE and individual school administrators, do not contest that they were acting under color of state law.  *See also Augustin v. Enlarged City Sch. Dist. of Newburgh,* 616 F. Supp. 2d 422, 438 (S.D.N.Y. 2009) (public school administrators acting under color of state law).  Because the defendants are state actors, the plaintiff's § 1981 claims serve only to establish a violation of her constitutional rights; she cannot obtain a separate remedy under that statute.  *See Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) ("§ 1981 does not provide a separate private right of action against state actors").

*Corp v. Green*, 411 U.S. 792 (1973).  *Barella v. Village of Freeport*, 106 F. Supp. 3d 144, 158

(E.D.N.Y. 2014) (collecting cases); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456,

466 (2d Cir. 2001) (*McDonnell-Douglas* applies to ADEA).  At the pleading stage, however, the

"plaintiff does not need to prove discrimination or even allege facts establishing every element of

the *McDonnell-Douglas prima facie* case."  Instead, she need only "plead facts sufficient to give

plausible support to the plaintiff's minimal initial burden, which is governed by the statute under

which she brings her claims."  *Richard v. N.Y.C. Dep't of Educ.*, No. 16-CV-957, 2017 WL

1232498, at *6 (E.D.N.Y. Mar. 31, 2017) (quotations and citations omitted).

To state a claim for discrimination, a plaintiff must allege facts that plausibly suggest that

(1) her employer took an adverse action (2) because of her age or race.  *Isbell v. City of New

York*, 316 F. Supp. 3d 571, 590 (S.D.N.Y. 2018) (citing *Vega*, 801 F.3d at 85).  At the pleading

stage, a plaintiff has a "minimal burden to show discriminatory intent."  *Littlejohn v. City of New

York*, 795 F.3d 297, 311 (2d Cir. 2015).  Nevertheless, the plaintiff must show that the

discriminatory intent be a "but for" cause of the employer's adverse action, and not merely a

"motivating factor."  *Naumovski v. Norris*, 934 F.3d 200, 215 (2d Cir. 2019) (§ 1983); *see also

Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020)

(§ 1981); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) (ADEA).

An adverse employment action is "a materially adverse change in the terms and

conditions of employment," which "must be more disruptive than a mere inconvenience or an

alteration of job responsibilities."  *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d

199, 207 (2d Cir. 2006) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir.

2004)).  Examples include "termination of employment, a demotion evidenced by a decrease in

wage or salary, a less distinguished title, a material loss of benefits, significantly diminished

material responsibilities, or other indices . . . unique to a particular situation." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotations and citations omitted).

The plaintiff alleges the following adverse employment actions: negative letters to her file (ECF No. 31 ¶ 51, 53), unfavorable performance reviews (*id.* ¶ 46-48), unfair reprimand (*id.* ¶ 123, 135), inappropriate changes to her work schedule (*id.* ¶ 119), interruptions during her lunch period (*id.* ¶¶ 116-17), unpleasant assignments (*id.* ¶ 126), and the initiation of a baseless Section 3020-a proceeding (*id.* ¶¶ 24, 27).

The defendants contend that these are not adverse employment actions.  I agree.  The "negative performance evaluations" and "letters to file" "do not rise to the level of an adverse employment action where . . . they d[id] not trigger other adverse consequences, such as loss of pay." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 255 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013); *see also Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 435 (E.D.N.Y. 2015) ("[D]isciplinary charges and written reprimands issued against the [p]laintiff do not, even if true, constitute an 'adverse employment action' because none resulted in a loss of pay, suspension, or material change in the terms of the [p]laintiff's employment.").  Nor was the plaintiff's unfavorable work schedule a materially adverse change to the terms and conditions of her employment: the back-to-back teaching periods, assignment to recess duty, and lack of bathroom breaks, while perhaps difficult, did not result in a decrease in salary, a less distinguished title, or a material loss of benefits.  *See Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[R]eceiving unfavorable schedules or work assignments do[es] not rise to the level of adverse employment actions because they do not have a material impact on the terms and conditions of [the] [p]laintiff's employment." (citation omitted)).

The plaintiff also alleges that the defendants initiated a Section 3020-a disciplinary proceeding against her.  (ECF No. 31 ¶ 27.)  "[D]istrict courts in this Circuit have disagreed as to whether an investigation into disciplinary charges that does not result in any discipline may be sufficient to constitute an adverse action[.]"  *Harris v. N.Y.C. Bd. of Educ.*, 230 F. Supp. 3d 88, 107 (E.D.N.Y. 2017) (citing *Campbell v. N.Y.C. Transit Auth.*, 93 F. Supp. 3d 148, 177 n.30 (E.D.N.Y. 2015)).  When they have found that the mere "institution of disciplinary proceedings" is an adverse employment action, they have done so in the context of retaliation claims, *see Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006) (citing *Burkybile v. Bd. of Educ.*, 411 F.3d 306, 313-14 (2d Cir. 2005)), *overruled on other grounds, Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008), or when the proceeding was accompanied by some change to the individual's terms and conditions of employment, *see Weber v. City of New York*, 973 F. Supp. 2d 227, 268 (E.D.N.Y. 2013) ("Plaintiff was suspended for 60 days without pay at the conclusion of the 3020-a proceeding.").

The plaintiff has not alleged that she lost pay, title, or responsibilities during her 3020-a proceeding.  While the allegations—which were ultimately withdrawn—were pending, the plaintiff worked at Frederick Douglas Academy VI High School, a school to which she was reassigned at her request, shortly before the initiation of the proceeding.  Accordingly, the plaintiff does not allege a materially adverse change in the terms and conditions of employment, and her discrimination claims are dismissed for failure to state a claim.

## II.     Hostile Work Environment

The plaintiff's hostile work environment claims must also be dismissed.  The Second Circuit has "repeatedly cautioned against setting the bar too high" in hostile work environment cases.  *Terry*, 336 F.3d at 148.  At the pleading stage, "a plaintiff need only plead facts sufficient

to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Pantene v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks, alterations, and citations omitted).  The standard is "essentially the same" under Sections 1981, 1983 and the ADEA.  *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451-52 (E.D.N.Y. 2011) (Section 1981 and 1983); *see also Boomalert v. City of New York*, 721 F. App'x 29, 33 (2d Cir. 2018) (Section 1983 and the ADEA).[8]

Anti-discrimination statutes do not create a "general civility code."  *Small v. New York*, No. 12-CV-1236S, 2017 WL 1176032, at *5 (W.D.N.Y. Mar. 30, 2017) (citing *Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir. 1999)).  "A few isolated incidents of 'boorish or offensive use of language' are generally insufficient to establish a hostile work environment." *Id.* (collecting cases).  The Court must consider "the totality of the circumstances, including (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance."  *Guity v. Uniondale Union Free School Dist.*, No. 18-CV-4369, 2019 WL 3402280, at *5 (E.D.N.Y. July 26, 2019) (citations omitted).

---

[8] The plaintiff does not allege hostile work environment or retaliation pursuant to the ADEA.  However, in pleading hostile work environment under § 1983 and the NYCHRL, she states that the defendants "created a hostile work environment for [her] based on her age and race."  (ECF No. 31 ¶ 158.) Moreover, her claim for retaliation under § 1983 and NYCHRL is based entirely on the defendants' actions after she filed her NYSDHR complaint, which alleged only age discrimination.  (*Id.* ¶¶ 95-96.) Because discrimination complaints are subject to a "lowered standard of review" at the motion to dismiss stage, *Ingrassia*, 130 F. Supp. 3d at 719, I interpret the second amended complaint to contain claims of age discrimination, hostile work environment and retaliation pursuant to the ADEA, § 1983 and the NYCHRL, and race discrimination pursuant to §§ 1981, 1983 and the NYCHRL.

The plaintiff alleges numerous unpleasant interactions with her supervisors but does not establish that they were based on her age or race.  For example, she claims that the principal asked her what was wrong with her face, chastised her for not enforcing school rules, and criticized her preparation of professional development materials.  Other than a single incident— the plaintiff alleges that the principal reprimanded her for not making a chart for a professional development but did not reprimand the younger, African-American teacher with whom she was working (ECF No. 31 ¶ 114)—nothing in the complaint suggests that the defendants' actions were motivated by animus against the plaintiff's race or age.  Instead, the various "hostile" interactions seem to stem from personal conflict, not discrimination.  "It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable . . . only when it occurs because of an employee's protected characteristic[.]"  *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 297 (S.D.N.Y. 2019) (citations omitted).

The plaintiff claims that the defendants "picked on [her] and other veteran teachers" while allowing "younger [w]hite teachers" to do the same things "without any consequences." (ECF No. 31 ¶ 155.)  The plaintiff does not explain how the defendants "picked on" her, or specify what the defendants permitted other teachers to do "without any consequences."  To the extent that the plaintiff contends that she and other senior teachers received increased scrutiny because of their age (*id.* ¶ 54), "excessive criticism is generally insufficient to support a claim of pervasive or severe hostile work environment."  *Mohan v. City of New York*, No. 17-CV-3820, 2018 WL 3711821, at *14 (E.D.N.Y. 2018) (citations omitted).

The plaintiff cites only one instance of a defendant allegedly raising the subject of race: a meeting at which Ms. Mazzarelli discussed a paper entitled "The Story of the Five Monkeys:

12

that's the way it has always been done."  (ECF No. 31 ¶ 99.)  The term "monkey" can be a "demeaning and offensive slur," *Green v. Jacob & Co. Watches, Inc.*, 248 F. Supp. 3d 458, 470 (S.D.N.Y. 2017), and the plaintiff argues that its use here was racist "[g]iven the historic association of monkeys and African Americans by the dominant American society."  (ECF No. 31 ¶ 101.)  Even if these comments were discriminatory, a hostile work environment requires "more than a few isolated incidents of [discriminatory] enmity."  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citation and quotation marks omitted).  The plaintiff alleges sporadic interactions, none of which are severe enough, singly or taken together, to constitute a hostile work environment.

Accordingly, the plaintiff's hostile work environment claim is dismissed.

### III.  Retaliation

The plaintiff's retaliation claims must be dismissed as well.  A plaintiff claiming retaliation under the First Amendment, §§ 1981 and 1983, and the ADEA must allege that (1) the plaintiff engaged in protected speech; (2) the plaintiff suffered a materially adverse action; and (3) there is a causal connection between the protected activity and the adverse employment action.  *See Vega*, 801 F.3d at 91 (defendants took adverse employment action against him because he complained of or otherwise opposed discrimination); *see also Betterson v. HSBC Bank, USA, N.A.*, 139 F. Supp. 3d 572, 591 (W.D.N.Y. 2015) (same standards under Section 1981 and the ADEA); *see also Guity*, 2019 WL 3402280, at *8 (First Amendment retaliation requires that the defendant took an adverse action against the plaintiff because she engaged in First Amendment-protected speech).

The difference is that under the anti-discrimination statutes, the speech must be "in opposition to an unlawful employment practice," *Bell v. Baruch College*, No. 16-CV-8378, 2018

WL 1274782, at *6 (S.D.N.Y. Mar. 9, 2018), while under the First Amendment, the speech must

be made "as a citizen" and "on a matter of public concern," *Singer v. Ferro*, 711 F.3d 334, 339

(2d Cir. 2013). "[C]omplaints about individual acts of discrimination or harassment are *not*

generally deemed to be of 'public concern,'" *Alexander v. City of New York*, No. 02-CV-3555,

2004 WL 1907432, at *13 (S.D.N.Y. Aug. 25, 2004) (citations omitted), except when they allege

system-wide discrimination, *id.* (citing *Wise v. New York City Police Dep't*, 928 F. Supp. 355

(S.D.N.Y. 1996) (sexual harassment complaints matters of public concern where complaints

pertained to plaintiff and other women in police department)).

The plaintiff plausibly alleges that she engaged in one activity protected under both the

anti-discrimination statutes and the First Amendment: her age-based discrimination and hostile

work environment complaint to the NYSDHR in March of 2018.  (ECF No. 34-3.)  A

discrimination complaint to a state agency constitutes a "protected activity" under the anti-

discrimination statutes.  *See St. Louis v. N.Y.C. Health and Hosp. Corp.*, 682 F. Supp. 2d 216,

235 (E.D.N.Y. 2010) ("NYSDHR filing constituted 'protected activity[.]'").  Moreover, the

plaintiff's NYSDHR complaint explicitly alleged discrimination not just against herself, but

other older teachers.  For example, the complaint claims that Principal Lazerson gave older

teachers "less than effective evaluations reports" and "more difficult teaching schedules," and

unfairly reprimanded them.  (ECF No. 34-3 at 7-8.)  Meanwhile, younger teachers were not

reprimanded for the same behavior and were given preference for school administration

positions.  (*Id.*)  Because the plaintiff's complaint "possibly implicate[s] system-wide

discrimination," it involves a matter of public concern.  *Wise*, 928 F. Supp. at 372.

The parties devote considerable attention to the plaintiff's other speech—her complaints

to other teachers about the "unprofessional and distracting" sale of AFLAC products on campus

by the principal's friend.  (*See* ECF No. 33 at 26-29; ECF No. 39 at 12.)  Such speech is not

protected speech under the anti-discrimination statutes because it did not "protest or oppose

statutorily prohibited discrimination."  *Sharpe v. MCI Comm. Servs., Inc.*, 684 F. Supp. 2d 394,

406 (S.D.N.Y. 2010) (citations omitted).

      Nor are the plaintiff's complaints about the AFLAC sales protected by the First

Amendment because they were not on a matter of public concern.  Speech "may be fairly

characterized as commenting on a matter of public concern, in light of the 'content, form, and

context of a given statement, as revealed by the whole record.'"  *Alexander*, 2004 WL 1907432

at *13 (citing *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)).  Comments about "internal

personnel disputes and working conditions" are not generally considered speech of public

concern.  *Brennan v. Straub,* 246 F. Supp. 2d 360, 365 (S.D.N.Y. 2003).  While the plaintiff

argues that she was speaking as a "concerned citizen taxpayer" (ECF No. 39 at 12), nothing in

the complaint suggests that her objections were more than a personal grievance.  She expressed

her views "in open discussion with and among fellow teachers" that the sales were "disruptive."

(ECF No. 31 ¶ 39.)  She did not complain publicly, elevate her concerns, or complain that the

sales were a waste of public tax dollars or resources.  *See Weintraub v. Board of City School*

*Dist. of City of New York*, 593 F. 3d 196, 203 (2d Cir. 2010) (teacher's complaint about the

principal's choice not to discipline a student was "pursuant to" his official duties because it was

about his ability to properly execute his job); *see also Dorcely v. Wyandanch Union Free School*

*Dist.*, 665 F. Supp. 2d 178, 207 (E.D.N.Y. 2009) ("The substance of [the p]laintiff's complaints

concerning the lack of sufficient educational and instructional resources and the appropriateness

of the counseling curriculum are matters relating to [the plaintiff's] own job responsibilities as an

educator and school psychologist, and therefore is unprotected speech.").

The plaintiff also plausibly alleges multiple adverse employment actions.  The principal placed negative letters in the plaintiff's file and gave her unfavorable performance reviews in the 2016/2017 and 2017/2018 school years.  In addition, the defendants instituted a Section 3020-a proceeding against her in September of 2018.  (ECF No. 18 ¶¶ 24, 25, 26, 41, 42.)  "An adverse employment action in the context of retaliation is different" and "covers a broader range of conduct" than in the context of discrimination.  *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 517 (E.D.N.Y. 2019) (citation omitted).  While the most obvious form of adverse employment action is still termination, *see Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 572 (S.D.N.Y. 2010) (collecting cases), "lesser actions may also be considered adverse employment actions," *Kelly v. Huntington Union Free School Dist.*, No. 09-CV-2101, 2012 WL 1077677, at *16 (E.D.N.Y. Mar. 30, 2012) (citation omitted).  "Because there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'"  *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) (citation omitted).

In the context of a retaliation claim, "the institution of disciplinary proceedings is sufficient in this circuit to constitute an adverse employment decision."  *Skehan*, 465 F.3d at 106.  Similarly, "negative performance reviews, standing alone, can be considered an adverse employment action for purposes of a retaliation claim."  *Taylor v. N.Y.C. Dep't of Educ.,* No. 11-

CV-3582, 2012 WL 5989874, at *10 (E.D.N.Y. Nov. 30, 2012) (citation and internal quotation marks omitted).  Accordingly, the plaintiff plausibly alleges adverse employment action.[9]

Nevertheless, the plaintiff does not adequately plead a causal connection between her protected speech and a materially adverse action.  "A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action."  *Smith v. Cty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (citing *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)).  Absent specific facts on causation, the Court "may infer that causation has been pled based on temporal proximity."  *Sosa*, 368 F. Supp. 3d at 518.  The time period between the protected activity and the adverse action must be "very close" to support a retaliation claim.  *Id.* at 519 (citations omitted).

The plaintiff filed her NYSDHR complaint in March of 2018.  (ECF No. 34-3.)  The defendants initiated a Section 3020-a proceeding against her in September of 2018, six months after the plaintiff engaged in the protected activity.  (ECF No. 34-1.)  "[A] passage of two months between the protected activity and the adverse employment action seems to be the dividing line."  *Cunningham v. Consol. Edison Inc.*, No. 03-CV-3522, 2006 WL 842914, at *15 (E.D.N.Y. Mar. 28, 2006) (collecting cases).  The other adverse employment actions that the plaintiff alleges—the letters to file and unfavorable performance reviews from the 2016/2017 and 2017/2018 school years—appear to pre-date her NYSDHR complaint.  (ECF No. 31 ¶¶ 46-

---

[9] The plaintiff's other allegations—including unfair reprimand, inappropriate changes to her work schedule, interruptions during her lunch period, unpleasant assignments (ECF No. 31 ¶¶ 46-48, 116, 123, 126, 135)—are "too minor to constitute an adverse action, even in the context of a retaliation claim." *Sosa*, 368 F.3d at 518 (collecting cases).  Nor is being placed on a performance improvement plan considered an adverse action in the retaliation context. *See Brown v. Am. Golf Corp.*, 99 F. App'x 341, 343 (2d Cir. 2004).

48, 51, 53.)[10]  The plaintiff makes no allegations in her second amended complaint that her performance reviews deteriorated further after she filed a NYSDHR complaint.  Because there is no basis to infer causation from the timing of this conduct, even at the motion to dismiss stage, the plaintiff's retaliation claims are dismissed.

## IV.  Due Process

The plaintiff claims that the defendants denied her due process by "commenc[ing] a Section 3020-a proceeding against [her] without first satisfying the prerequisites for commencing such a proceeding."  (ECF No. 31 ¶¶ 159-67.)  According to the plaintiff, she was not placed on a teacher improvement plan before the proceeding, nor did she receive an overall "ineffective" for two years.  (*Id.* ¶¶ 160-62.)  Moreover, she argues that the defendants did not dismiss the Section 3020-a proceeding with prejudice and therefore could renew the proceeding in the future. (*Id.* ¶ 166.)

Courts have repeatedly held that Section 3020-a provides more than sufficient process. *See, e.g.*, *Cozzi v. Great Neck Union Free School Dist.*, No. 05-CV-1385, 2009 WL 2602462, at *13 (E.D.N.Y. Aug. 21, 2009) ("[I]t is well established that the disciplinary procedures outlined in § 3020-a provide more than adequate procedural safeguards to satisfy the plaintiff's due process rights under the Fourteenth Amendment.").  The plaintiff did not identify any property interest of which she was deprived during the pendency of her Section 3020-a proceeding.  She continues to work for the DOE, and "[a]n employee who continues to be paid by h[er] employer cannot sustain a claim for deprivation of property without due process."  *Ramberran v.*

---

[10] The plaintiff alleges retaliatory actions by the defendants on April 10, 2018, and May 17, 2018, but she does not describe either action.  (ECF No. 31 ¶ 96.)  Accordingly, there is no basis to conclude that these were "adverse" actions or causally related to the plaintiff's filing of her NYSDHR complaint.

*Dellacona*, No. 07-CV-304, 2008 WL 905217, at *4 (E.D.N.Y. Mar. 31, 2008) (collecting

cases).  Accordingly, the plaintiff's due process claim is dismissed.

**V.      Monell**

There is no *Monell* liability because there was no constitutional violation stemming from

the underlying individual allegations.  *See Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.

2006) (no *Monell* liability absent underlying constitutional violation); *see also City of Los*

*Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at

the hands of the individual police officer, the fact that the departmental regulations might have

authorized the use of constitutionally excessive force is quite beside the point.").  Accordingly,

the plaintiff's *Monell* claims are dismissed.

**VI.     Negligent Supervision**

To prevail on a claim for negligent supervision, the plaintiff must show that the school

administrators were not "acting within the scope of [their] employment; [for] in that situation the

employer [would] only be liable . . . vicariously under the theory of *respondeat superior*, [and]

not for negligent supervision or retention."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 129-

30 (2d Cir. 2019) (quoting *Gray v. Schenectady City Sch. Dist.*, 86 A.D.3d 771, 774 (3d Dep't

2011)).  The plaintiff does not allege that the individual defendants took any action that was

outside the scope of their employment.  Rather, her claims for negligent supervision against the

Department of Education center on Principal Lazerson's alleged failure to discipline certain

teachers while unfairly punishing others.  (*See* ECF No. 31 ¶¶ 170-78.)  Because supervising and

disciplining teachers is certainly within the scope of a principal's employment responsibilities,

the plaintiff's claims for negligent supervision by the Department of Education must be

dismissed.

## VII.   NYCHRL Claims

I decline to exercise jurisdiction over the plaintiff's NYCHRL claims.  "Where a court dismisses all claims over which it has original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over remaining claims."  *Wolfinger v. Consolidated Edison Co. of New York, Inc.*, No. 17-CV-1710, 2018 WL 3637964, at *12 (E.D.N.Y. July 31, 2018) (citing 42 U.S.C. § 1367(c)(3)).  In deciding whether to exercise supplemental jurisdiction, district courts should balance the values of judicial economy, convenience, fairness, and comity. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) ("[F]ederal policy concerns may argue in favor of exercising supplemental jurisdiction even after all original-jurisdiction claims have been dismissed.").

Having dismissed all federal claims in this action, I decline to exercise supplemental jurisdiction over the plaintiff's remaining city law claims.  *Klein & Co. Futures. Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006) ("[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

20

**CONCLUSION**

For the reasons stated above, the defendants' motion to dismiss the plaintiff's second amended complaint is granted.  The second amended complaint is dismissed with prejudice.  The plaintiff's NYCHRL claims are dismissed without prejudice.  The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

   s/Ann M. Donnelly     
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      January 13, 2021